Good morning, and I would like to request, if I could, two minutes of rebuttal time. Before the Court is a review of the BIA's denial of a motion to remand. There's only one significant case in this case, and that's January of 1979, when Mr. Steinki was convicted of cultivation of marijuana. Importantly to me is the motion to remand was not opposed by district council, by DHS. What's raised is a fundamental question of due process. Did the immigration judge advise Mr. Steinki of the availability of suspension of deportation at the time of his removal hearing? But the IJ doesn't have to be clairvoyant. And so all that you have there is like a box checked, right? Doesn't he check a box of, he doesn't put on anything about, he would have had to have shown, he had the time, I guess. That's correct. He had the years, but, and he has a 1979 conviction, but he would have had to have shown extreme hardship. And he doesn't put the IJ on any sort of notice that he would have been able to do that. So does the IJ, you know, how clairvoyant, there's nothing in the record to that effect. Well, there is, of course, the period of time. There's a period of good moral character, there's information about a wife and two children. But it couldn't reach a discretionary. But he would have had to show extreme hardship, right? Yes. And so, I mean, it's pretty fundamental if he said, well, he doesn't say I have a wife and children. He doesn't say, you know, I've got kids that, you know, this would happen to them if I have to go or anything like that. No. The first part is clearly in the record. He applied for residency through a U.S. citizen wife. That's how he got into proceedings. So the court was aware that he had a wife and two children and how long he lived here. There was no way to present or no reason at the time to present a discretionary avenue for relief because the judge said there is no avenue for relief. That's what the judge said. And that was the problem. Clearly, it cannot be clairvoyant. He had a lawyer, too, right? Yes, and it was obvious and it should have been obvious to me as well at that time that old rule, no, no, he was married. No, well, then he was, but at the time when Herrera was passed, he wasn't married yet, was he? Was he married yet? No, I don't think he was married in 1997. He was subsequently married. Okay, he had the kids. Yeah, the children were older. The children were born prior to the date of the marriage. So he had the children and he was subsequently married. Well, and now the kids are old, right? So now he's not going to have any extreme hardship, right? To the children, that's correct, but under old rule suspension of deportation, hardship to self is one of the enumerated grounds for establishing eligibility for suspension. This comes up on a denial of a motion to reopen. Motion to remand. Motion to remand, excuse me. And the other side, the government says that you failed to make a showing of, a prima facie showing of eligibility, that all you did was make a couple of allegations and leave it at that, and they cite on page 30 of their brief all kinds of cases that say you've got to do more than just throw something on the table and say, look, I'm married and I have kids and all that. You've got to flesh that out. What's your answer to that? Because it is different in this situation in that he was, the cases cited were subsequently acquired eligibility for relief. Relief that came up after the hearing. In this situation, relief was available. But you could say it now. What a remand would accomplish for you now is he probably gets to stay here five more years and maybe the law will change, right? But I mean, but what indication is there that he would be able to get relief if we send it back? Other than just delaying this process. I mean, the kids are grown now. It doesn't, there's nothing indicating that his wife is suffering from some terrible disease or, you know, I'm not, you know, if you have a story, when is anyone ever going to tell us the story? Because I would submit the time to present the story is when it's remanded,  the eligibility and hearing the testimony is what should have proceeded before the immigration judge. Clearly had the immigration judge been aware of this court's ruling in Lopez Castellanos, the court would have said, by the way, you know, present something on that eligibility, rather than saying, sorry, there is no relief. Well, what did you present on eligibility that should have gotten the board to remand it? What we presented was evidence that he was statutorily eligible for suspension, that he had requisite family members, that he had the requisite period of time in the United States to be eligible for suspension prior to IRA-IRA. So he would have been, he was eligible, and it was a remedy that was overlooked. The board in this decision did not talk about a prima facie case at all. They simply said as a matter of law, he is precluded from proceeding. Didn't reach a prima facie argument, just said he's precluded as a matter of law, and I don't think that's accurate. It's clear in this court's decision in Cardenas, the Supreme Court in Vartelis, that reliance is not a requirement. The fact whether Mr. Steinke relied upon the eligibility for suspension of deportation is not an issue before the court and shouldn't be considered. What seems to be fundamental is the duty of the immigration judge. It is an immigration judge's responsibility, and the statute says, even when represented by counsel, when something is somewhat apparent. But how, what made it apparent? They didn't say anything. There was one box that was checked, right? No. Before the immigration judge, what was apparent in court was an application for residency through a U.S. citizen wife, information about the marriage, information about the kids, and the long period of residency. But what would he have had to have shown extreme hardship to succeed on that? Well, he could have done many things through testimony. But why didn't someone just say, he's going to be able to show extreme hardship? Just because he has children doesn't mean... Well, if we're looking at the moment when he was in front of the immigration judge... Well, you're asking us to say that there's a due process violation that the immigration judge didn't do enough investigation to determine that there could have been something out there for him. That's correct, yes. All right. But we know that immigration judges don't have to be clairvoyant. There's got to be something there that puts them on some kind of notice that they have to go further. What put him on notice? I think those facts, Your Honor, that he presented a period of some 40 years in the United States. He presented 18 years of good conduct post-conviction in 1979, two children. Those are facts that would warrant a further inquiry. Of course, the inquiry wasn't made because the judge said, you're not eligible for anything. There's no form of relief under the INA Act. What do you do with the board's final statement? It says, as to the motion to remand, I know you've read this many times, and that such relief would likely be granted in the exercise of discretion. So they say, you haven't shown us that there was a likelihood that the exercise of discretion would be exercised in his favor. What do you do with that? I don't believe it's correct. In this case, there's a fundamental due process violation in the underlying procedure, the immigration judge's failure. The testimony should be presented to the immigration judge. They say, look, you have to show that there's a likelihood that this kind of relief would be granted in the exercise of discretion. You haven't demonstrated that in your support of the motion to remand. In your answer to that, did you show that it was likely to be granted? All you showed was just a bare-bones claim of prima facie eligibility. And that plausible relief was available. Plausible relief was overlooked by the immigration judge. There was eligibility for relief, and the way to approach that eligibility for relief. Yeah, but I'm talking about the motion to remand now. Yes, I understand. And you've got to make some kind of showing on the motion to remand that there's reason to do that. Eligibility, and I say not only haven't you shown eligibility, that's questionable, but you haven't shown that relief would likely be granted in the exercise of discretion. I don't believe that that's the correct standard. It's only that there was plausible relief available that was overlooked, because that's the due process argument. You've got about 15 seconds left. Do you want to save it? Excuse me? You've got about 10 seconds left. Do you want to save it? Only that what was the error seems to have been the relief should have been looked at by the immigration judge. Clearly not clairvoyant, but the facts, looking at them openly, clearly this is a man with eligibility. Let's ask another question. That's what was overlooked below. Thank you. Thank you. We'll hear from the governor. Good morning, Your Honors. May it please the Court, Rob Stolzer on behalf of the Attorney General. Your Honors, I want to point out starting that this case is subject to the criminal alien jurisdictional bar, which means we're limited here to questions of law and constitutional questions. And Petitioner has not raised a legal or constitutional question with respect to the Board's exercise of discretion to determine that he didn't demonstrate a prima facie eligibility or that it would be granted as a matter of discretion if the motion to remand was granted. That's a discretionary action, normally reviewed under the abuse of discretion standard. And he hasn't raised a legal or constitutional question with that portion of the Board's discretion. Well, sir, what's going on? You know, I just, I always get curious about what's really going on. He's not one of the worst people that we ever see coming before us. So what is, I mean, is there, is there any, does the, and he's been here a really long time, and I guess his conviction was back in the 70s for cultivation of marijuana. And so I guess he didn't start paying taxes until, what, 2001 or, so he doesn't fall under any area that, now the kids are grown, I guess, mostly, right? And they'll go back to Canada, right? That's my understanding, Your Honor. I reached out to DHS when the case was reassigned to me to see if they would exercise discretion on his behalf. They declined. And I can't, I can't go beyond DHS. If they want to prosecute the laws, then they get to prosecute the laws. Hold on a second. You tried to see if DHS would exercise the discretion that he needs to stay here, and they told you no? They declined, yes. Is that in the record? No, Your Honor. I simply was, Judge Callahan seemed to be indicating, wondering about this person. You know, as she said, he's not the worst guy ever, and I would agree he's not, but he is in violation of the laws. Did they do that in writing? No, Your Honor. So you called somebody on the phone? Yes, Your Honor. Who did you call? Chief Counsel's office. And with whom did you speak? I don't actually recall the attorney's name. And did that person pull the file? I believe so. What do you mean, you believe so? I'm not criticizing you. I'm just trying to find out what happened. Well, I believe that they looked at the case to see if they would exercise discretion, and they said they declined. While you were on the phone? Or did you ask them to call you back? I mean, how did this work? It was actually a series of three phone calls. So I guess the point is you don't think that mediation would? It wouldn't change the outcome, Your Honor. I don't believe so. Again, it was his burden on a motion to reopen, not just to show statutory eligibility, but also to go beyond that and say there's a likelihood that he would be granted this relief if it was remanded. And that, like I said, is. But he didn't have a chance to do that, right? He would have had to do that in the motion to remand. He did have the opportunity to do that. But I thought he was told there's no jurisdiction to consider it, so there's no possible relief to be granted because I.J. mistakenly thought that I.R.I.R. barred him. Not in the motion to remand. In the motion to remand, he specifically said, oh, I want to get suspension now, and this was overlooked. But he didn't provide enough information for the board to conclude that it would be granted as a matter of discretion or that he demonstrated a prima facie case. Again, because all he provided in the motion to remand was the application itself and I think the birth certificates for the children. Did you – have you told counsel before that you tried to intervene on behalf of his client? I haven't talked to counsel, no. So this is news to the other side, too, that you've talked to DHS? Yes, sir. So let me understand. You – is your position that the St. Cyr argument is not probably before us? Correct, Your Honor. The court doesn't need to reach the question of whether or not – That's not the question I asked. I don't believe it's before the court because of the alien – excuse me, the criminal alien jurisdictional bar. Because the board was acting as a matter of discretion, the court lacks jurisdiction to go beyond that. And the underlying question of whether or not he would be eligible for suspension is therefore not properly before the court. Well, we have a – we have a ruling on the retroactivity point from the board. Why can't we review that? Indeed. And I note that – in fact, the board said we note. They were ruling in the alternatives. They're suggesting to the extent he's raised this issue, we don't believe he would be eligible anyways because it had been repealed, of course, and also because he wouldn't – he never demonstrated eligibility at the time when it was in effect, right? In addition to the 10 years that would have had to pass, he would also have to demonstrate good moral character at the time and the extreme – or the exceptional, extremely unusual hardship, right? Because this is a 10-year suspension, which is the more burdensome version of suspension at the time. Well, but that raises the – represents a question of whether you can repeal it after he has done everything that's necessary to establish an entitlement to relief. We know some is. So you – I know you have an answer to that, but we don't have any law on that, right? I don't believe so, Your Honor. But I do want to distinguish this case from the St. Cyr line of cases, the 212C line of cases. For 212C relief, all you needed was the accrual of time. You needed the 7 years and then the discretionary grant later. And this Court and the Supreme Court and the other circuit courts have come along and said, well, look, that's a pretty cut and dried evaluation. You get the 7 years, great, you would be eligible. Suspension is not likely. In addition to the accrual of time, you would also have to accrue the other things I've named, the hardship and the moral character demonstration. So it's not quite so automatic as it was in the 212C line of cases. For suspension, it's a more burdensome form of relief requiring more than just the accrual of time after his conviction. Well, assuming – let's just assuming that we look at what the IJ did initially. I mean, counsel is saying essentially that there was a due process violation, that the IJ was somehow on notice to ask further questions to see if he was eligible for anything else. What in that hearing would have put the IJ on notice? I don't know, Your Honor. And actually, I would commend the immigration judge in this case. She went out of her way to explore the options with his attorney, providing continuance so that he could include the application for adjustment in the record because she said, I want to make sure that you preserve this for review. I mean, this is far from a due process violation. She was looking for some way to do something and encouraging Petitioner's counsel, please file something. She told him on more than one occasion. I see there's no applications in the record. Are you going to file something? The answer is no. I'm just going to appeal. The answer was no, Your Honor. He had plenty of opportunity to apply for that suspension if he thought he was eligible or at least to raise something to say, oh, look, there would be hardship in my life beyond the ordinary hardship, of course, associated with removals. And he never did. So there was no need to change. Well, but now, if he were to get a remand, he would have to go back. And what would he have to show now? If he received a remand and the court determined that he was eligible for suspension of deportation, he would have to show, I suppose, the 10 years, which he can show good moral character, I suppose now rather than when IJ was repealed, but I'm not sure on that. And he would have to show the hardship either to himself or to the qualifying members, family members. But the hardship would be based on, but wouldn't it be based on the age of the kids now and where they are now in their lives? Or is he trying to get to go back to when they were 4 and 6 or whatever that was back then? I believe the hardship would be now, but I'm honestly not sure, again, because the form of relief has been repealed. And his argument, to some extent, hinges on the events of that repeal in 1996 or 1996. I'm curious why you didn't tell counsel for the other side that DHS has said we're not going to exercise discretion on its client's behalf. In all my cases, Your Honor, I go to DHS to see if there's any other form of relief they can offer. And it's a matter of course in my own cases. Yeah. And I often don't communicate that to counsel. Why not? Because there doesn't usually seem to be a need. If I thought there was more information available in the case or necessary in the case, certainly I'd approach counsel to see if they had anything else to tell me. But I didn't think it was necessary in this case. You just figure someone like me might ask you? Indeed. And I want to be able to say, yes, Your Honor, I have explored that option. And unfortunately, they declined. If there are no other questions, Your Honor. And you think there's no give there if we send this to mediation? No, I don't believe mediation would alter the outcome in this case, Your Honor. Okay. Thank you. Thank you very much. You're out of time. But if you'd like to take a minute for rebuttal, I'll give you that. Thank you for that opportunity. Just very briefly, the Board's decision looks at Valencia. Its analysis of the case is not on point. And it doesn't raise the issue of a prima facie. It denies the case. It doesn't mention prima facie. It says it's a matter of law. There's no eligibility. After reviewing it. Yeah, but then it also says you haven't made any showing that there's a likelihood of discretion being exercised in your client's favor. But respectfully, that's not what I think would be the issue. Remands aren't just to buy time. No, clearly not. And so that's that they do buy time. They do buy time probably five years, right? No, I never thought to buy time. Well, no, but a remand, if something goes back on a remand, you know, the things move so slowly that that probably buys five years. So that's why a remand requires some showing that there would be a likelihood that you'd be able to present something. And also that it was denied fundamental due process because of the error of the immigration judge to say. Well, I guess every time you keep saying that, the way I hear that, the due process is the only way you can win because you don't have extreme hardship circumstances. Well, I would just submit that, you know. I'm telling you what I'm hearing. No, I think the length of time, the nature of the offense so many years ago, the length of time in the United States, the family, I think that hardship element should be addressed through an evidentiary hearing before an immigration judge. It's not something that's simply submitted. Yeah, but we hear this. If you had someone on dialysis, if you had dying relatives, if you had all of those things, people spew those every minute. And the fact that you're not saying it, that you're saying, well, they just didn't do it right, so I get to go back. Those facts of dying relatives and dialysis, that's correct. I don't think that the record, I don't think those facts are present. Do you have any reaction to this rather curveball announcement that DHS has already said you lose? No, I was not aware of it. I was not aware of that. I don't want to think. I'm not quite sure what we do with that, except frequently, we do send these things to mediation. And we do ask, is there any room for mediation here? So I understand why the other side might check it out first. Well, mediation certainly would be appropriate if we had some guidance. Okay. Thank you. Thank you. The case is how it was to be submitted.
judges: KOZINSKI, TROTT, CALLAHAN